## John T. Berry *vs.* The Convention of the Protestant Episcopal Church of the Diocese of Maryland.

A vendor sold land, and gave a bond of conveyance, covenanting to convey *"free of all incumbrances,"* and the purchaser gave his several bonds to secure the payment of the purchase money, upon the two last of which the vendor recovered judgments. The elder of these judgments he assigned, and *after this assignment* the purchaser paid the amount due on the *junior judgment.* The assignee had notice that the judgment assigned to him was for land purchased by the judgment debtor from the assignor. The vendor afterwards died insolvent, never having executed a deed to the purchaser, and his widow claimed dower out of the land, which dower claim the purchaser was compelled to pay, and then filed his bill against the assignee, claiming a set-off, on account thereof, against the assigned judgment. Held:

1st. The purchaser knowing that the previous judgment had been *bona fide* assigned for value, should have retained the money due on the last judgment, and having failed to do so, he cannot now fall back upon the debt due the assignee and discount from that the amount of the dower money paid by him to the widow.

2nd. The judgments should have been paid in the order in which they fell due, and any equitable claim like this for dower, should be set up against them in the inverse order in which they were payable.

3rd. But if the purchaser, at the time of the assignment of the judgment and his payment of the junior judgment, did not know that his vendor had a wife living at the time, he cannot be held answerable for laches in not providing against the consequences of a fact of the existence of which he was ignorant, but it matters not whether the assignee knew of this fact or not.

4th. If the purchaser is ultimately compelled to pay the whole amount of this judgment, he will be entitled to a decree as a general creditor against his vendor's estate, for the amount paid by him for the widow's dower.

Appeal from the Circuit Court for Baltimore city.

The original bill in this case was filed on the 24th of October 1848, by the appellant, against the appellee and the executor, widow and devisees of Robert W. Bowie, deceased.

It alleges, that on the 17th of December 1839, Robert W. Bowie executed to the complainant a bond of conveyance for a tract of land, and in the same year delivered possession thereof to him; that complainant, in compliance with this bond, executed to Bowie his four bonds for the purchase

money, with a surety, all of which he has paid, except two, for $6,666.66⅔ each, on which Bowie recovered judgments, the one at April term 1843, and the other at April term 1844, of Prince George's county court; that he has made several payments to Bowie on these judgments, and that the last of them is fully satisfied; that Bowie assigned the *first* judgment to the convention of the Protestant Episcopal church, and it stands now entered to the use of this assignee; that Bowie is dead, leaving a large but incumbered property, and his estate is insolvent; that Bowie's widow (Catharine Bowie,) has filed a bill for dower out of the land so sold him by her husband, and he is advised that she has such a right, and that it is a valid incumbrance thereon, and if she recovers it, he will be unable to indemnify himself out of Bowie's estate; that the assignee of this judgment holds it subject to all the equities existing between him and Bowie at the time of the assignment, or arising out of his subsequent death, and his widow's refusal to relinquish her dower, and that as against said assignee he is entitled to deduct from the judgment the value of the dower aforesaid, but that said assignee is about to issue execution on the judgment, and ought to be enjoined, and that the widow ought to be enjoined from prosecuting her claim for dower till relief shall be done to all parties, and he tenders, if desired, the money due on the judgments to be brought into court.

The bond of conveyance was filed as an exhibit with the bill. It is in the penal sum of $30,000, dated the 17th of December 1839, and sets out a sale by Bowie to Berry, of a plantation containing six hundred acres, more or less, and that Berry has given Bowie four bonds, all of even date with the bond of conveyance, and bearing interest from the 1st of January 1840, the first for $10,000, payable the 1st of March 1840, and the other three for $6,666.66⅔ each, payable respectively on the first days of January 1841, 1842 and 1843, and its condition is, that Bowie shall, upon their payment, make to Berry a good and sufficient conveyance of the premises, *"free from all incumbrances."*

With the bill were also filed, 1st, a short copy of the oldest judgment on the first unpaid bond, at April term 1843, the only credit on which is $370.42, being the interest to the 22nd of November 1843; 2nd, a similar copy of the junior judgment on the last bond, at April term 1844, which shows a credit of $2721.03, as of the 22nd of November 1843; 3rd, several receipts for other payments subsequently made on the last named judgment.

An amended and supplemental bill was filed on the 18th of December 1848, charging that at least $3500 of the purchase money paid to Bowie, was applied by him to obtain the *legal title* for the land in question, which was conveyed to him by deed from his vendor, dated the 25th of November 1843, and that other large payments were applied by Bowie in the same manner, and that these payments ought to be deducted out of the widow's claim for dower, and prays for an injunction restraining execution of the judgment, which was granted.

The answer of the convention admits, that to secure the repayment of a loan of $6105.89, made by respondent to Bowie, the latter, on the 27th of November 1843, assigned to respondent a judgment for that amount, which he had recovered against Berry and his surety in April 1843, which judgment was accordingly entered for respondent's use, and the whole amount thereof, with interest from the 27th of November 1843, is due and unpaid, and that respondent means to enforce the same by execution; that when respondent made this loan and received this security, it understood that the judgment had been recovered on an obligation for the purchase money of land in Prince George's county, sold by Bowie to Berry. The answer also admits Bowie's death, but respondent does not know whether his widow has sued for dower, as alleged, nor what her dower rights are, but denies that her claim can affect respondent, or the judgment assigned to it; that the judgment assigned was the elder judgment on account of the purchase money, and that the payments made by Berry on the junior judgment, were made when he was

aware of the assignment to respondent of the elder judgment, and was bound to make them according to the priorities of the judgments, and that he cannot, in equity, set up his payments on the junior judgment to affect the rights of the assignee of the elder judgment, who is a *bona fide* holder thereof, for a valuable consideration.

The answer further alleges, that in the summer of 1847, Berry being pressed for payment of this judgment, applied to respondent for indulgence and a further credit of twelve months; offered to pay all arrears of interest, and the interest in advance for twelve months, and to give additional security by a mortgage of negroes; that respondent consented, and received the arrearages of interest, and interest up to the 27th of November 1848, but that Berry never gave the mortgage on the negroes, though it was drawn up under his own direction by respondent's agent, and though he obtained, by such undertaking, the forbearance he had stipulated for, and that it is against equity for him to seek to impair respondent's rights under the judgment, with an agreement, unperformed on his part, to secure to respondent the amount of the judgment, the benefit of which he has enjoyed.

In October 1854, a motion was made to dissolve the injunction, when it was agreed between the parties that the judgment assigned to the convention was recovered on a bond given by Berry to Bowie, in the manner and for the purchase money due on the contract stated in the bill; that at the time of the assignment the assignee had notice that the judgment was recovered on an obligation given by Berry to the assignor, for the purchase money of land in Prince George's county, sold by the assignor to him; that Thomas F. Bowie, the attorney by whom the judgment was recovered for the assignor, was, from and after the assignment, continued as the attorney of the assignee in respect to the judgment, and, as such, received payments thereon; that Bowie, the assignor, died about the 1st of January 1848, and that the assignment was made at the instance and by the act of Thomas F. Bowie, he being, at the time, the attorney of the assignor and of the

assignee; that Berry, since the death of Bowie, has been sued by the widow of the latter for dower in this land, and compelled, by decree of the court, to pay to her, as of the 29th of July 1851, $2479.24, with interest on $2048.96, from the 8th of July 1851, which he has accordingly paid; that all Bowie's estate, real and personal, has been sold to pay his debts, and is insufficient therefor; and that Berry had notice of the assignment of the judgment to the convention shortly after the entry of the same on the docket.

The deposition of Thomas F. Bowie was also filed, to the effect that he was attorney of the convention in regard to the judgment of April 1843, which was assigned to the convention on the 6th of December 1843, and the use entered on the docket; that as such attorney he caused a *fi. fa.* to be issued and levied upon the land sold to Berry. In this state of affairs Berry applied for further time and indulgence in the payment of the judgment; deponent referred him to Mr. Donaldson, of Baltimore, who acted on behalf of the convention in the matter, and gave him a letter, dated the 16th of June 1847, introducing him to Mr. Donaldson. This letter being shown to deponent he states that it is in his hand-writing, except certain memoranda thereon, written by Mr. Donaldson after he received it. Deponent also recollects Mr. Donaldson's reply, and it is substantially what appears upon what purports to be a draft or copy thereof shown to him. Deponent and Berry subsequently met in July 1847, and the arrangement was entered into which is set out in another letter from deponent to Donaldson, dated the 13th of July 1847. In pursuance of this agreement Berry requested deponent to prepare a mortgage of the negroes to be given by him as security, and promised to execute it when prepared, and furnished deponent a list of negroes for that purpose, and deponent prepared the mortgage accordingly. Berry informed deponent that he had paid the interest according to the arrangement, and deponent directed the sheriff, in Berry's presence, not to advertise or proceed with the execution. Berry agreed at the time to pay the sheriff his poundage fees.

Since then nothing has ever been done upon the execution, and deponent from time to time expected Berry to call and execute the mortgage until he heard of his filing his injunction bill.

The first letter referred to in the preceding deposition from Thomas F. Bowie to Donaldson, dated the 16th of June 1847, introduces Mr. Berry to the latter; states the object of Berry to be to obtain further indulgence on the judgment by giving additional security; and expresses the writer's opinion that the judgment in its present form is a safe investment. On this letter was a memorandum by Mr. Donaldson, to the effect that Berry proposes to pay the interest now due, and one year's interest in advance, provided he can have credit for one year, or until he can get the crop of 1848, when he pledges himself to pay the whole or greater part of the debt. He is desirous of getting his deed from Bowie, and if assented to he will immediately execute a mortgage upon eight hundred acres of land and twenty-five servants to secure the debt. The property cost $30,000, and has since improved in value. It is free from incumbrances and will be mortgaged clear of dower.

The letter of Donaldson to Thomas F. Bowie, in reply to the preceding, states that the board of trustees determined, if Mr. Robert W. Bowie will consent thereto, to grant further time to Berry on the judgment, on condition that he pay at once all arrearages of interest and one year's interest in advance. If Bowie should refuse to consent to a postponement of the proceedings then in progress on the judgment, the indulgence will be granted to Berry on payment of interest as above stated, and by giving additional security other than his lands on which the judgment was a lien, this security to be approved of by Thomas F. Bowie, and placed on a basis to make it available in case it should be necessary to resort to it. The judgment to be kept alive, so that at the end of twelve months the *fi. fa.* can be enforced.

The second letter from Thomas F. Bowie to Donaldson, dated the 13th of July 1847, acknowledges the receipt of the

preceding letter from Donaldson, and states that Berry had agreed to execute a mortgage on all his negroes, some thirty in number, to secure the judgment, Mr. Bowie still declining to consent to the indulgence without his being released; that this will (if further security were necessary) undoubtedly place the judgment in a condition to be realised at any time; that Berry is also to pay up all arrearages of interest and one year's interest in advance; that he has promised to bring up a list of the negroes, when the writer will prepare the mortgage and have it recorded; that besides being a judgment *vs.* John T. Berry, it is also a lien on the real estate of his brother and co-defendant, who has a fine landed estate.   That it is also secured by a mortgage to Bowie on all the negroes of Berry, and the assignment of the judgment carries with it the mortgage rights of Bowie, the assignor, so that even now the convention has, in the opinion of the writer, a mortgage on Berry's negroes by virtue of Bowie's assignment of the mortgage thus secured, but to make the matter doubly sure the writer will have a new mortgage executed.

There was also filed a copy of this unexecuted mortgage and a receipt from the treasurer of the convention, dated the 22nd of July 1847, for $641.21, paid by Berry for arrearages of interest, and interest in advance to the 27th of November 1848, on this judgment, for $6105.89, due the convention.

There was also filed an assignment of this judgment, signed by Robert W. Bowie and dated the 27th of November 1843, to the effect that he had that day assigned to the convention a judgment recovered by him in April 1843 against Berry for $6105.89, to secure the repayment of that sum loaned him by the convention, one-third of which was to be repaid in two, and the residue in three and four years from date, with interest, payable quarterly, according to the tender of certain promissory notes of this date drawn by him and endorsed by George Rust, "And I do hereby consent and agree, that in case of default in payment of any one of these notes when due, the convention shall be and is hereby authorised to issue execution on the judgment for the recovery of the whole

amount loaned me," &c.   He also agreed to pay the taxes on the judgment, and acknowledged that it was for part of the purchase money for a farm sold by him to Berry, and was entitled to a preference in payment to the balance of the purchase money remaining due.

A paper containing a short copy of this judgment was also filed, upon which, immediately under the judgment, was the following acknowledgment, dated the 22nd of November 1842, and signed by John T. Berry:

"I do hereby acknowledge that the judgment obtained against me in Prince George's county court by Robert W. Bowie, of which the above is a short copy, was for a portion of the purchase money for the farm in said county sold by him to me, and that at this time there is due and unpaid on said judgment the sum of $6105."

On the same paper was also the following assignment under the hand and seal of Robert W. Bowie, dated the 27th of November 1847:

"For value received, I do hereby assign and transfer to the convention of the Protestant Episcopal Church of the Diocese of Maryland, incorporated by law, all my right, title, interest claim and demand, of, in and to the judgment obtained by me in Prince George's county court, at April term last against John T. Berry and Alfred M. Berry, of which the within is a short copy."

And it was admitted that the body of the certificate signed by Berry, and the body of the assignment of the short copy of the judgment, except the number of the day of the month, and the statement on the short copy of the interest paid thereon, are in the handwriting of Mr. Donaldson, one of the trustees appointed by the convention to manage the fund of which the judgment is a part.   It was also agreed that all the preceding evidence should be received as if duly taken under a commission.

Upon this evidence the court below, (KREBS, J.,) passed an order dissolving the injunction, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-
STON and MASON, J.

*Charles E. Phelps* and *Robert J. Brent* for the appellant:

1st. If this were a contest between the purchaser, Berry,
and his vendor, Bowie, the former could certainly deduct from
the unpaid purchase money the value of the dower interest or
incumbrance paid by him.   This equity is derived from the
title bond itself, which stipulates for a title *clear of incum-
brances,* and that alone enables us to have relief against un-
paid purchase money.   5 *Monroe,* 260, *McKoy vs. Chiles.*
Independent of the bond, the purchaser has a right, before
completion of the contract, to have all incumbrances removed,
as a contract to sell *implies a clear title.*   *Atkinson on Titles,*
565, 369, 379, quoted and approved in *Duffy vs. Calvert,* 6
*Gill,* 516.   3 *Peere Wms.,* 307, *Tourville vs. Naish.*   2 *Sug-
den on Vendors, ch.* 12, *sec.* 2.   Such would be the equities
between the assignor of this judgment, and Berry the pur-
chaser.

2nd. Does this equity attach to the assignee of the judg-
ment?   We say that it does.   Here is an assignee purchasing
with notice that the judgment is for unpaid purchase money,
and that there were other portions of the purchase money un-
paid.   Were they not bound to know that before that pur-
chase money was paid up, Bowie must give a *clear title,* and,
if incumbrances existed, that the purchase money was appli-
cable to extinguish them?   Ignorance of the law in such a
case excuseth not.   15 *Eng. Law & Eq. Rep.,* 112, *Cockell vs.
Taylor.*   They did not require Berry to waive in their favor
his equity, inherent on the known facts, if incumbrances ap-
peared on the land before payment of the judgment.   *Non
constat* that Berry knew of this inchoate dower right, or knew
that Bowie was married.   He had no right to know it until
the purchase money was paid, and Bowie was ready to give
him the deed, and if there was no incumbrance at that date,
there was no breach of the bond.   5 *Paige,* 235, *Brown vs.
Haff.*   1 *Bland,* 75, *Rawlings vs. Carroll.*   The general rule

as to assignees taking subject to all equities, is stated in 2 *Johns. Ch. Rep.*, 479, *Livingston vs. Dean.* 1 *Munf.*, 533, *Mayo vs. Giles.* 1 *Paige*, 319, *Webster vs. Wise.* 2 *Murphey*, 30, *Jordon vs. Black.* 3 *Monroe*, 510, *White vs. Prentiss.* These authorities show, that, as a general principle, a *chose in action* cannot be assigned, and that the assignee, when assigned, takes it subject to all the equities in the hands of the assignor.    The distinction between a purchaser of a *chose in action* and a purchaser of real estate without notice, is clearly shown in the case of *Cockell vs. Taylor*, 15 *Eng. Law & Eq. Rep.*, 110.    But the present case is different from all cited, in this, that here the assignee had full notice of the facts on which Berry's equity arose by law.

3rd. Has Berry forfeited his right to this equity by any subsequent act or laches on his part?

1st. As to the objection, that having paid the junior judgment first, he cannot now set up this equity.    The assignee had Bowie's private stipulation not to collect the other bonds first.    Yet they serve no notice of this stipulation, but on the contrary, give time to Berry for a valuable consideration, and leave Bowie free to press him on other judgments and bonds. But this objection is sufficiently answered by the fact that both judgments were due when Berry paid the junior judgment to Bowie, and if the church chose to let their over-due judgment sleep from November 1843, when they purchased it, until 1847, when they bargained to give time to the debtor, they cannot complain if Berry, in the years 1844, 1845 and 1846, paid the junior judgment, when he was under no notice not to do so.    But a still more conclusive reason why it was right in Berry to pay the junior judgment first, appears in the fact that the church had made the loan to Bowie on his notes, endorsed by Rust, at two, three and four years from the 27th of November 1843, and the judgment being assigned expressly to secure these notes, the church had no right to collect it *by execution* until the notes fell due, which would be, for the first, the 27th of November 1845, and for the last, the 27th of November 1847.    It was before the maturity of these notes

that Bowie collected the junior judgment, as he had a right to do.

2nd. As to the certificate signed by Berry. There is no evidence in the record that he knew when he was asked to sign this certificate, that Bowie was negotiating with the *church* for a loan of money on the faith thereof. This paper only shows the consideration on which the judgment was rendered, and the amount due on it, and the equity which Berry relies on now is perfectly consistent *with this certificate*. It was designed only to protect the assignee, whoever he might be, against *secret payments*, but says nothing about equities which might *thereafter arise*.

3rd. As to the extension of time given to Berry, and his promise to pay in connection therewith. When this extension was made, there was clear notice to the assignee that Berry had *not got his deed* from Bowie, and, therefore, that by law he was entitled to a deed from his vendor, clear of incumbrances. The negotiation for this extension did not begin until the 16th of June 1847. The assignee is no worse off by the extension of the time of payment than before; 1st, because they received from Berry a valuable and stipulated consideration for the indulgence, and thus received equal benefit from the extension; 2nd, because if they had forced Berry to pay up this judgment, he then had a legal right, before he paid, to call for a clear title, and could then have obtained relief by injunction against the assignee, unless Mrs. Bowie's inchoate right of dower was relinquished. There is no difference in principle between rights of parties before and after extension, except that in one case the incumbrance was inchoate, and in the other was consumated by the survivorship of the widow. In either case Berry has a right to obtain his land clear of incumbrances, and the assignee took the judgment and extended the time of payment with notice of this right.

Again the promise of Berry to pay, if the extension should be granted, was to pay the whole or greater part of the debt when he should secure the crop of 1848. He, therefore, did

not promise to pay the whole, and if he is credited with the dower money, he still pays a greater part of the debt. According to his promise he was at liberty to retain an uncertain portion of the purchase money due on the judgment, and he now only claims to retain $2400 out of $6105. The case of *Kemp vs. McPherson*, 7 *H. & J.*, 337, decides that if, after assignment, the obligor, with full knowledge of a charge against the bond, promises to pay the assignee, he cannot be relieved. But that is said in a case where the rights of the debtor existed at the time he promised payment, and yet were concealed, and the assignee had no actual or constructive notice of the equity. There was in that case a promise by Kemp to pay the bond, notwithstanding he should have to discharge the *incumbrances* upon the land, but here there was no promise by Berry that he would pay the judgment though he should have to pay the *widow's dower*, and in this essential particular the two cases are *totally different.*

Notice to the assignee of the facts will prevent a waiver of the equity, unless the debtor agrees to waive all equities at the time he promises to pay; for a promise to pay is not inconsistent with the enforcement of the equity, especially when the equity is known to the assignee as much as to the debtor. Independently of notice of the equity to the assignee, the waiver of the equity is on the ground of deceit or concealment of an existing equity known to the debtor and unknown to the assignee, coupled with a promise to pay the assignee. 2 *Md. Ch. Dec.*, 140, *Hall vs. Purnell.* The reason of the rule preventing the obligor from setting up equities concealed from the assignee, is that it is a fraud. 2 *Spence's Eq.*, 864. 15 *Eng. Law & Eq. Rep.*, 110. 2 *Md. Ch. Dec.*, 140, *Hall vs. Purnell.*

Now here was a promise to pay to Bowie in the very bond itself, but that would not prevent Berry from relief on the final settlement, according to the contract known to Bowie, therefore a mere promise to pay is, of itself, no answer to the equity. Why should a promise to the assignee, even in consideration of forbearance, have greater effect? Bowie was

576 MARYLAND REPORTS.

Berry vs. The Convention of the Episcopal Church.

alive in 1847, when this promise was made, and Berry was then ignorant of the existence of this equity. No one could foresee Bowie's death, insolvent, and the renunciation of his widow, and her throwing herself upon her legal rights, and, under such circumstances, the law will not impute to him constructive notice, for this would be to impute to him 'a fraud. 15 *Eng. Law & Eq. Rep.*, 110. The equity being, then, remote, unknown and speculative, it is not like the case of the concealment of a known existing equity, where there must be fraud, if it is concealed from the assignee. Berry could not anticipate the survivorship of Mrs. Bowie, and the subsequent insolvency of Bowie's estate. *Non constat*, from the evidence, that he even knew that Bowie was married. It is, therefore, a case of a promise to pay, in ignorance of any incumbrance at the time of the promise, and it is only a promise to pay an existing liability, subject to contingent and unascertained discounts, the promisee knowing all the facts.

There is no proof of any laches on the part of Berry that would relieve Bowie, and if Bowie's estate was *solvent*, this court could at once decree payment of this claim for dower on suit by Berry. The default of Berry, if there was any, does not add to the equity of the assignee, unless it amounts to such laches as would deprive him of his equity as *against Bowie*. 2 *Story's Eq.*, sec. 776.

Finally, it appears from the assignment that the judgment was only assigned as collateral security for the payment of certain notes of Bowie, endorsed by Rust. Now it is only consistent with principles of equity that before Berry should lose his equity as against this assignee, the insolvency of the endorser should be shown, because he was bound in the original debt of Bowie to the church. If he be able to pay, then the church must marshall its securities so as to collect, if possible, its claim, without inflicting irreparable loss on Berry, who has been made to pay money, for which he has received no *consideration* whatever.

*J. Mason Campbell* and *Thos. S. Alexander* for the appellees:

Whatever may have been the equity of Berry against Bowie, in regard to the claim for dower, he has estopped himself by his own certificate of the amount due upon the judgment held by the convention, to press that equity against the assignee who acted on his certificate given for the very purpose.

The facts of the case show that Bowie was the owner of this judgment in 1843, and then held another bond *due at that time.* Berry knew, at the time he signed the certificate, that it was to be signed by him for the purpose of *an assignment,* and a few days after he signed the certificate, he *knew of the fact* of the assignment, for he saw it. It was a certificate unquestionably given to induce and facilitate the assignment of the judgment to *some one,* and it makes no difference that he had no knowledge that the appellees were the *particular parties* to whom the assignment was to be made.

In 1847, when asking an extension of the time for payment of this very judgment, Berry speaks of the title to this very land, and says that it was then free of *all incumbrances of dower* of every body. If these equities had been then suggested, the church could have resorted to Bowie and his *endorser,* but we then granted indulgence to Berry *without Bowie's consent,* and therefore released him, and at Berry's request, and to grant indulgence to him have lost a part of our securities. If, then, we are now to lose this claim, it is undeniably because, in 1847, we consented to withhold the execution which then would have resulted in our recovery of the whole amount of the judgment, and this delay was granted at Berry's *request,* and for *his indulgence.* The *possibility* of dower then existing, has ripened into *a right* only because of the *laches* of Berry. There was then but an inchoate right of dower dependant upon two contingencies, 1st, the survivorship of Bowie's widow, and 2nd, the omission of Bowie to convey the estate to Berry, for the chancellor, in the dower case, decides that he could convey the estate and defeat the right of dower. 3 *Md. Ch. Dec.,* 362, and 1 *Do.,* 454, *Berry vs. Bowie.*

Now what is the law applicable to these facts? 1st. Conceding there is an equity, we say the assignee is, under the circumstances, released. 2 *White's Lead. Cases in Eq.*, 233. 15 *Vermont*, 269, *Foot vs. Ketchum.* 2 *Md. Rep.*, 407, *Doub vs. Mason.* The case of *Kemp vs. McPherson*, 7 *H. & J.*, 320, announces the doctrine that the *effect* of the statements of the debtor in such a case as this, is to *deceive the assignee*, and that he is bound by his statements. This case is the law of this State, and has never been disputed, but is recognized in 9 *Gill*, 431, *Beard vs. Hubble.* See also 1 *Macnayhten & Gordon*, 437, *Mangles vs. Dixon.* If Berry agreed to pay the *whole debt* (even conceding he had a claim to a set off,) in consideration of the indulgence for twelve months, it is a contract which a court of equity will enforce. He cannot dispute the *facts* contained in his *certificate.* 2 *Comstock*, 278, *L'Amoreux vs. Vischer.* When he gave this certificate, he held in his hands the amount of the other and junior bond, which was abundantly sufficient to meet this claim.

2nd. There is no equity in the case. There is no case to be found where a party has been allowed to *manufacture* an equity out of his own *laches*, and yet this is precisely what Berry is seeking here to do. If he had paid his bonds and got his deed, the claim for dower never would have *arisen;* for when these bonds were due, Bowie held but an *equitable title* to the land, and the widow then had no claim for dower. We say, then, in conclusion, that Berry having notice of the assignment to the church, and dealing with the assignee directly as creditor, and obtaining time and indulgence for payment from the assignee, by covenanting to give further security, which he failed to give, has no equity against the church in regard to the dower of Mrs. Bowie, his present difficulty arising out of his own failure to secure himself against. the dower out of his payments to Bowie on the unassigned judgment.

MASON, J., delivered the opinion of this court.

An attempt was made by counsel, in the course of their

argument, to reflect upon the motives and conduct of the respective parties to this record. We can discover in the facts before us no warrant for any accusations against either the complainant or defendants, in the course which they have pursued in this transaction, but on the contrary we regard both as being in court with *clean hands.*

The material facts, as alleged by the complainant in his bill, and as they are proved or admitted, are, that in 1839 R. W. Bowie sold an estate to the appellant, and executed to him a bond of conveyance, and in conformity therewith the latter executed and delivered to said Bowie his three several bonds, each for $6666.66⅔, payable at different periods. Upon the two bonds last falling due judgments were confessed, one at April term 1843 of Prince Georges county court, and the other one year after. The judgment on the bond preceding the last was assigned to the *convention of the Episcopal Church,* the appellees in this proceeding. *After this assignment the appellant paid to said Bowie the amount due upon the last judgment.* The bond of conveyance stipulated, on the part of Mr. Bowie, for a title free from all incumbrances; no deed was in fact ever executed. The bill proceeds further to charge that Bowie is dead, leaving a large, but incumbered property, and that his estate is insolvent; and that Mr. Bowie's widow has filed a bill against the appellant, claiming dower out of the property so sold him by her husband, and that he is advised that she has such a right, and that it is a valid incumbrance thereon; and that if she recovers the same, he will be unable to indemnify himself out of the estate left by Bowie; that the assignee of said judgment holds it subject to all the equities existing between him and Bowie at the time of the assignment, or arising out of his subsequent death, and his widow's refusal to relinquish her dower; and that, as against said assignee, he is entitled to deduct from the judgment the value of the dower aforesaid, but that said assignee is about to issue execution on said judgment, and ought to be enjoined; and that Catharine Bowie ought to be enjoined from prosecuting her claim for dower

till relief shall be done to all parties; and he tenders, if desired, the money due on the judgments to be brought into court.

He further states that Bowie left a will, and that letters thereon have been granted to Judge Tuck; and that his widow has refused to take, in lieu of her dower, the real estate therein bequeathed to her; and that a part of his real estate is devised to his executor to be sold for his debts; and that another part is devised to his nephew, Robert Bowie, in trust for her daughters, Caroline, wife of Osborn Sprigg, and Priscilla, wife of Richard L. Ogle, and another part devised to I. I, Bowie, his son; and that the daughters and son, above mentioned, with Robert Bowie, are the only children and heirs-at-law of said Robert W. Bowie, and are all parties to this proceeding. The convention had notice that the judgment assigned to them was for land purchased by the appellant from Mr. Bowie.

Mrs. Bowie subsequently sustained her claim to dower, and the question is, can the sum thus recovered by her be discounted from the judgment now held by the convention?

The complainant's case rests upon the theory, that as the defendants had knowledge that the debt which was assigned to them, was due on a contract for the purchase of land, knowledge was therefore to be imputed to them of the provisions and incidents of that contract, one of which was, that the purchaser was to have a good title, and as there was an inchoate right of dower in Mrs. Bowie, it might ultimately mature, and subject the amount of purchase money to a reduction unless extinguished, and that therefore they took the assignment of the judgment subject to this equity. Concede this position to be correct, still the same knowledge would inform the defendants that at the time they took the judgment in question there was another and a junior instalment on the land still unpaid. Although they might not have been unmindful that this sleeping equity against the purchase money might be awakened into active life, still they must be supposed to have acted upon the correct assumption, that there was ample indemnity and protection both as to them-

selves, as well as to the purchaser also, against such a contingency, in the defined or junior instalment still remaining unpaid in the latter's hands.

It was the duty of the complainant, knowing that the previous installment had been *bona fide* assigned for value, (and knowledge of this fact is sufficiently inferable from the certificate given by Mr. Berry, as well as from other circumstances,) to have retained in his hands the money due on the last, as a protection, if any were necessary, against the consequences of a non-fulfilment by Mr. Bowie of his contract. Having parted with this means of protection or indemnity, which would only be availing in his own hands, he cannot now fall back upon the debt due the appellees, and have that discounted to the amount of the dower money recovered by Mrs. Bowie. The installments should have been paid in the order in which they fell due, and any equitable claim like the present, against the purchase money, should be set up against the several instalments in the inverse order in which they were payable.

These views, it will be observed, are based upon the hypothesis that Mr. Berry knew that Mr. Bowie had a wife living at the time these several transactions took place. If he did not, he could not be held answerable for *laches* in not providing against the consequences of a fact, of the existence of which he was ignorant, but it matters not, in any aspect of the case, whether the convention knew or not of the existence of this fact of Mr. Bowie's having a wife.

Unless, therefore, the parties can come to some agreement upon this question, we will remand the case under the act of 1832, ch. 302, to enable the parties to amend their pleadings and take proof upon the point, without either affirming or reversing the decree of the court below.

Upon the bill and other proceedings now before us, the court are of opinion that if the decree in this case should ultimately be against the appellant, he will be entitled to a decree as a general creditor against the representatives of Mr. Bowie's estate, for the amount which he has been obliged to pay to Mrs. Bowie for her dower.

We do not think the appellees are entitled, unter the peculiar circumstances of this case, to costs, and we therefore remand the case without allowing them.

*Cause remanded, under the act of* 1832.